UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

WEBSTER BIVENS,
BERNADETTE BIVENS,
CHELSEA BIVENS,
CHYNNA BIVENS,

    Plaintiffs,

v.                    208CV026

SHIRLEY ROBERTS, et al.,

    Defendants.

## ORDER

### I.    BACKGROUND

In this 18 U.S.C. § 1962 (RICO), 42 U.S.C. § 1983, and fraud case, *pro se* plaintiffs Webster, Bernadette, Chelsea and Chynna Bivens accuse over 100 defendants[1] of conspiring to defraud them out of their Brunswick, Georgia area land by, *inter alia*, forging signatures on a gift deed and then using "fraudulent documents" that were "processed and signed and switched back and forth" among the defendants in order to conceal the defendants' wrongdoing. Doc. # 188-4 ¶¶ 126, 146. Specifically, plaintiffs allege that their parents, grandparents, great-grandparents and/or aunt were owners of real property located in the Harrington area of St. Simons Island, Georgia (the "Catherine Whing Property" or "the Property") and that various defendants conspired to defraud them out of their ownership of it. *Id.* ¶¶ 32-33. Shirley Roberts and three other defendants allegedly forged documents and deeds resulting in illegal transfers of the Catherine Whing Property. The remaining defendants are individuals, law firms, and other organizations that were allegedly involved in Roberts' "racketeering organization."

A variety of defendants[2] jointly move to dismiss plaintiffs' case for failure to state a claim under F.R.Civ.P. 12(b)(6). Doc. # 56. Defendant Alfonza Ramsey has filed a separate 12(b)(6) motion. Doc. # 149. Defendant Pecolia Baisden and defendants James Bishop and James Bishop Law Firm move for judgment on the pleadings under F.R.Civ.P. 12(c).[3] Doc. # 153 (Baisden motion); # 156 (Bishop motion). In response, plaintiffs filed a motion for leave to amend their complaint to incorporate new facts and to add additional defendants. Doc. # 169.

---

[1] The list of defendants differs with each version of plaintiffs' complaint, and the defendants listed in the heading of the complaint are not necessarily the same as the defendants listed in the text of the complaint. Based on the most recent version of the complaint, doc. # 188-4, the defendants intended to be included in this suit appear to be: Shirley Roberts; John McQuigg; Joseph Strength; St. Simons Island Land Trust, Inc.; Kathy Hutcheson; Sea Island Coastal Properties, LLC; Jameson Griggs; Lisa Newton; Pecolia Baisden; M.P. Hogdon; Alfonza Ramsey; Emory Rooks; Mark McGregor; Eunice J. Wilcox; Gilbert, Harrell, Sumerford and Martin, P.C.; Neptune Whing; Sandra Helton; James Bishop, Jr.; James Bishop Law Firm; Daryl B. Ray; First African Baptist Church; Cynthia Wilson Brown; The St. Simons African-American Coalition; Thomas J. Whelchel; John McQuigg; Whelchel & McQuigg Law Firm; Benny's Red Barn; and John and Jane Does 1-100.

[2] They are: Gilbert, Harrell, Sumerford and Martin, P.C.; M.P. Hogdon; Kathy Hutcheson; Lisa Newton; Sea Island Coastal Properties, LLC; St. Simons Island Land Trust, Inc.; and Joseph Strength.

[3] Rule 12(b) motions must be made before responsive pleadings are filed, while Rule 12(c) motions may be made after that. F.R.Civ.P. 12(b-c); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Courts thus treat a Rule 12(b) motion filed after a responsive pleading as a Rule 12(c) motion for judgment on the pleadings based on a failure to state a claim upon which relief may be granted. *Greninger*, 188 F.3d at 324. Additionally, a Rule 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

This Court deferred ruling on plaintiffs' motion to amend their complaint and gave the plaintiffs an opportunity to submit a copy of the proposed amended complaint for the Court's review. Doc. # 179. As plaintiffs have submitted the proposed amendments, the Court now considers the motion to amend as well as various defendants' motions to dismiss. Plaintiffs have also filed a motion for injunctive relief to enjoin quiet title proceedings initiated by one of the defendants. Doc. # 177.

## II. MOTION FOR LEAVE TO AMEND COMPLAINT AND 12(b) MOTIONS

Under Rule 15(a), leave to amend shall be "freely given when justice so requires." F.R.Civ.P. 15(a). If a *pro se* plaintiff might cure any defect in its complaint through amendment, the Court must generally provide at least one chance to amend unless there is good reason to deny leave to amend.[4] *Clark v. Maldonado*, 288 F. App'x 645, 647 (11th Cir. 2008); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (discussing reasons that leave to amend might be denied).

Although the plaintiffs' request to amend ultimately proves futile, the Court nevertheless grants leave to amend, doc. # 169, and adopts the plaintiffs' Revised Second Amended Complaint, doc. # 188, as the live complaint in this case and will reference that version of the complaint throughout this Order.

The Court will not require the defendants to file a new motion to dismiss simply because the amended pleading was introduced while their motions were pending. "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1476, at 558 (2d ed. 1990). *See also Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 640 n.1 (E.D. Pa. 1999). Thus, the Court considers defendants' motions to dismiss and for judgment on the pleadings in light of plaintiffs' Revised Second Amended Complaint (hereinafter, the "Complaint").[5]

## III. FACTS[6]

Plaintiffs allege that their parent, grandparent, great-grandparent, and/or aunt were owners of property located on St. Simons Island, Georgia, which they refer to as the "Catherine Whing Property" (the "Property"). Doc. # 188-4 ¶ 33. Originally owned by Catherine Whing, the Property (or some portion of it) passed to Catherine Whing's children – Florine Bivens and Malachi Whing. *Id.* After Florine Bivens and Malachi Whing died in 1971 and 1967, respectively, "their estate was seized of land which was not administered in a probate proceeding." *Id.* The defendants "caused the documents to issue purporting to transfer title to [the Catherine Whing Property] to themselves or third parties." *Id.* Specifically, in 1988 Shirley Roberts, with the help of certain other defendants, allegedly forged the signatures of Florine Bivens and Malachi Whing on a gift deed, and took possession of

---

[4] Plaintiffs have already amended their complaint "as a matter of course" (before any responsive pleadings were filed). Doc. # 9 (First Amended Complaint). The general rule that plaintiffs be given at least one chance to amend their complaint does not include any amendment that was made as a matter of course. *Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001)

[5] Alternatively, the Court could have denied plaintiffs' request to amend their complaint on the basis of futility, *see Foman*, 371 U.S. at 182, and considered the motions to dismiss in light of the prior complaint.

[6] For purposes of these 12(b)(6) and 12(c) motions, the Court accepts the facts alleged by the plaintiffs as true.

2

the Property. *Id.* ¶ 126. Plaintiffs allege that, from 1997 through 2008, the defendants engaged in a multitude of illegal transactions involving the Property. *Id.* ¶¶ 128, 131, 132, 139, 150.

### A. The Roberts Group

As permitted by F.R.Civ.P. 10(c), plaintiffs have attached to the Complaint an uncertified copy of Indictment # CR-0500294-063 from the Glynn County, Georgia Superior Court. It charges Shirley Roberts, Pecolia Baisden, Neptune Whing and Eunice J. Wilcox with "Theft by Taking," "Theft By Deception," "Forgery in the First Degree," "False Statements to a Political Subdivision," "Perjury," and "Violation of the Power or Duty of A Notary." Doc. # 188-5. Collectively, these defendants are referred to as "the Roberts Group."

Shirley Roberts allegedly "forged the signatures of Florine Bivens and Malachi Whing on the Gift Deed, resulting in illegal transfers of the Catherine Whing Property" and signed false affidavits to facilitate the illegal transfers of the Property. Doc. # 188-4 ¶¶ 37, 38. Roberts made 28 transfers or transactions between 2/13/97 and 3/98 and 17 between 6/18/99 and 12/5/07, yet the Complaint provides few details as to the nature of each transfer. *Id.* ¶¶ 128, 132. At some point, Roberts signed affidavits attesting that Florine Bivens had no children knowing that this statement was false. *Id.* ¶ 39. Additionally, on 2/6/98 she "signed a document knowing that the document was false and illegal." *Id.* ¶ 129.

Defendants Baisden, Whing, and Wilcox assisted Roberts in various ways. Wilcox allegedly fraudulently notarized "documents and deeds forged by Roberts" and other documents related to several unspecified land transfers between members of the Roberts Group. *Id.* ¶¶ 46, 47. Baisden and Whing signed affidavits attesting that Florine Bivens had no children knowing this statement was false. *Id.* ¶¶ 43, 54. On 3/30/98 Baisden submitted a "false and fraudulent statement" to the local government "and misstated her relationship with Malachi Whing and Florine Bivens." *Id.* ¶ 138. On 5/19/04 Whing "submitted a false, fictitious, and fraudulent document, falsifying his relationship to Florine Bivens and Malachi Wing." *Id.* ¶ 140.

There were other defendants who were not indicted along with the Roberts Group, but who allegedly assisted Roberts. Defendants Alfonza Ramsey, Cynthia Wilson Brown, and Emory Rooks all signed affidavits attesting that Florine Bivens had no children when they knew this statement to be false in order to assist in the transfers of the Property. *Id.* ¶¶ 50, 59, 63. Additionally, on or about 2/6/98 Ramsey "signed an affidavit describing property purportedly owned by Shirley Roberts before Defendant Eunice Wilcox." *Id.* ¶ 130.

Defendants James Bishop and the James Bishop Law Firm allegedly "directed the affairs of the RICO enterprise by supplying false and fraudulent documents, knowing the documents to be false and fraudulent, to [the Roberts Group]." *Id.* ¶ 154. On or about 5/22/88, Bishop and/or his law firm "made and issued to defendant Shirley Roberts a form purported to be a 'Gift Deed.'" *Id.* ¶ 127. Between 6/6/97 and 5/21/07 Bishop and the James Bishop Law Firm "manufactured and distributed over 100 affidavits and documents aimed at acquiring the plaintiffs' ancestral properties. Bishop knew at all times that these affidavits and documents were being used for deceitful and fraudulent purposes." *Id.* ¶ 175. In preparing these affidavits, the James Bishop Law Firm "filled out all the necessary data on them, leaving nothing for the Roberts Group to do but forge the names and notarize." *Id.* ¶ 176. "On more than one occasion" Bishop or his law

3

firm "mailed a manipulative or deceptive device or contrivance in contravention to the law." *Id.* ¶ 134.

Additionally,

> James Bishop Jr. enlisted Shirley Roberts and the "Roberts Group" to sign, notarize, and submit affidavits and documents to the Georgia State Court System for processing, and the Roberts Group then transferred the fraudulent documents and affidavits among and between each other to conceal their illegal conduct and conceal their ill gotten gains.

*Id.* ¶ 172.

### B. The Land Group

Two corporations and one of their agents are also accused of wrongdoing. The St. Simons Island Land Trust, Inc., Sea Island Coastal Properties, LLC, and M.P. Hogdon (collectively, the "Land Group") "used documents that they knew or should have known were fraudulent to convey land." *Id.* ¶¶ 107, 110, 112. The involvement of these defendants appears to be based in several property transactions. First, on 2/10/02 some or all of the Catherine Whing Property was transferred to both the St. Simons Island Land Trust and Sea Island Coastal Properties. *Id.* ¶ 152. That same day, Sea Island Coastal Properties, "in collusion with" St. Simons Island Land Trust, defendant Shirley Roberts, and defendant M.P. Hogdon, donated a portion of the Property to the Georgia Department of Natural Resources. *Id.* ¶ 169. Additionally, "[o]n or about May 10, 2009,[7] Sea Island Coastal Properties took formal action to acquire property [from] the St. Simons Island Land Trust, property which was obtained by the insidious machination of the James Bishop Jr. and Shirley Roberts joint enterprise." *Id.* ¶ 150 (footnote added).

### C. The Law Group

The plaintiffs allege that a number of other lawyers and their law firms were involved in illegal activity, though the precise nature of their involvement is unclear from the Complaint. Gilbert, Harrell, Sumerford and Martin, P.C., Joseph Strength, Lisa Newton, Kathy Hutcheson, the Whelchel & McQuigg Law Firm, Thomas Whelchel, and John McQuigg all "used false, forged, and fraudulent documents that were made available to them by the enterprise to siege [sic] control of plaintiffs['] heritage property" and conspired with other defendants as part of a racketeering organization. Doc. # 188-4 at 10-14. Joseph Strength prepared the document conveying the Catherine Whing Property to St. Simons Island Land Trust and Sea Island Coastal Properties on 2/10/02. *Id.* ¶ 152. Furthermore, "[o]n one or more occasions, Whelchel and McQuigg [and Joseph Strength] caused to be mailed, a false and fraudulent document." *Id.* ¶ 141, 142.

### D. Other Defendants

Finally, there are other defendants whose involvement in this conspiracy is unclear and for which the allegations in the complaint are extremely limited. Jameson Griggs is simply identified as having "act[ed] as an agent for members of the Racketeering Organization." *Id.* ¶ 115. The First African Baptist Church and the St. Simons African-American Coalition are alleged only to have "agreed, associated with, and conspired with" other defendants. *Id.* ¶¶ 119, 121. Defendant "Benny's Red Barn" owns a business on the Catherine Whing Property. *Id.* ¶ 117. Defendants Daryl B. Ray and Mark McGregor "used a false and fraudulent document" bearing the "forged signatures that had been made by Roberts" in order to borrow money from a bank on 3/5/98 and

---

[7] As this date lies in the future, the Court assumes that the date provided by the plaintiffs is the result of a typographical error.

4

3/5/08. *Id.* ¶¶ 104, 137, 151. Ray and McGregor also "agreed, associated with, and conspired with" other defendants. *Id.* ¶¶ 102, 105. One hundred John and Jane Does are named in the Complaint, but no allegations are made against them.

### E. Causes of Action

Based on these facts, the plaintiffs allege in Count One that all the defendants conducted or participated in the conduct of a RICO enterprise in violation of 18 U.S.C. § 1962(c). *Id.* ¶ 159. As a result, plaintiffs "suffered injuries to their properties" and "have not received any value for their properties." *Id.* ¶ 167. Count Two alleges that all the defendants conspired to commit a RICO violation under § 1962(d).

Aside from the RICO claims, Count Three alleges a claim under 42 U.S.C. § 1983. Plaintiffs allege that Sea Island Coastal Properties, St. Simons Island Land Trust, Shirley Roberts, and M.P. Hogdon "'donated' a portion or parcel of plaintiffs['] ancestral property to the State of Georgia's Dept. of Natural Resources." *Id.* ¶ 169. In so doing, those defendants were "acting under the color of the State of Georgia" and "violated the plaintiffs' rights guaranteed by the Fifth Amendment to the U.S. Constitution to receive 'just compensation' for their property taken 'for public use.'" *Id.* ¶¶ 169, 171.

Finally, Count Four alleges "Fraud and Deceit" against the Roberts Group, James Bishop, and the James Bishop Law Firm for the falsification of affidavits and other documents "aimed at acquiring the plaintiffs' ancestral properties." *Id.* ¶ 175.

## IV. ANALYSIS

### A. Pleading Standards

In considering a Rule 12(b)(6) (and thus, a Rule 12(c)) motion, all facts in the plaintiffs' complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted). If it does not, the complaint should be dismissed. *Id.* Thus, while F.R.Civ.P. 8(a)(2) requires only a "short plain statement of the claim showing that the pleader is entitled to relief," allegations in the complaint must "possess enough heft to show entitlement to relief." *Twombly*, 127 S. Ct. at 1966 (quotes, cite and alterations omitted). Furthermore, there remains the longstanding rule that "conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996).

In addition to those general pleading standards, there is a heightened pleading requirement for RICO and fraud claims.

> Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity. *See* Fed.R.Civ.P. 9(b); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud. *Brooks*, 116 F.3d at 1380-81.

5

*Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). A RICO complaint "should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1317. One cannot simply lump multiple defendants together and make a general allegation against the group. *Id.*

Finally, the Court takes the plaintiffs' *pro se* status into account when reviewing the sufficiency of the Complaint. *Pro se* plaintiffs are constitutionally guaranteed access to the courts, *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983), and are otherwise entitled to have their pleadings construed liberally, *Sanders v. U.S.*, 113 F.3d 184, 187 (11th Cir. 1997), but they nevertheless must abide by the rules, *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

That means that judges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision that untrained legal minds sometimes employ. *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (pursuant to the less stringent standard applied to a *pro se* litigant's pleadings, wildly implausible allegations in the litigant's complaint should not be taken as true, but the court ought not penalize the litigant for linguistic imprecision in his more plausible allegations); *St. John v. U.S.*, 54 F. Supp. 2d 1322, 1323 (S.D. Fla. 1999) (court is not required to abrogate basic pleading essentials or conjure up unpled allegations simply because plaintiff is proceeding *pro se*).

Not surprisingly, *pro se* litigants often do not understand complex legal principles and thus fail to plead "foundation facts" to a claim. They cannot, however, simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim. To the contrary, plaintiffs must plead factual allegations upon a good faith belief per F.R.Civ.P. 8 and 11. Again, judges cannot and must not "fill in the blanks" for *pro se* litigants; they may only cut some "linguistic slack" in what is actually pled.

### B. Count One -- RICO

RICO makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). Additionally, liability can fall upon any individual who conspires to violate any RICO provision. *Id.* § 1962(d). "Any person injured in his business or property by reason of a violation of" RICO's substantive provisions shall "recover threefold the damages he sustains" plus attorney fees. *Id.* § 1964(c).

In civil cases RICO plaintiffs must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that (5) results in an injury to business or property (6) by reason of the substantive RICO violation. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006).

#### 1. *A Pattern of Racketeering Activity*

While there are a variety of defects in plaintiffs' claims, the Court begins with the allegations of a pattern of racketeering activity. To demonstrate such a pattern, the plaintiffs must allege that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct

of a continuing nature." *Jackson v. BellSouth Telecom.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

### a. PREDICATE ACTS

Through their various motions, defendants argue that plaintiffs have failed to identify any predicate act upon which liability might attach. *See, e.g.,* doc. # 52-2 at 11. "Predicate acts" include acts that violate specific statutes that are listed in 18 U.S.C. § 1961. Thus, the alleged "racketeering activity" must be shown to involve the violation of one of the specific criminal statutes listed in 18 U.S.C. § 1961(1) for which a defendant could be indicted. *See* 18 U.S.C. § 1961 (defining racketeering activity to include specific conduct "chargeable" under state law, or specific offenses that are "indictable" under criminal statutes); *Malloy v. Wiseman*, 2008 WL 150072, at *1 (M.D. Fla. 1/14/08).

The Complaint lists a variety of acts that plaintiffs identify as "predicate acts." These include, for example, the forging of signatures on a deed, certain transactions of property, notarization of false documents, and submitting false statements to a political subdivision. Doc. # 188-4 ¶¶ 126-152. While some of these acts may be criminal, they are not predicate acts for purposes of RICO. The only acts that arguably fall under the umbrella of § 1961 are the mailing of false or fraudulent documents which might constitute mail fraud. *See* 18 U.S.C. § 1961(a) (defining "racketeering activity" to include mail fraud).[8] "Mail fraud ... occurs whenever a person having devised or intending to devise any scheme or artifice to defraud, uses the mail for the purpose of executing such scheme or artifice or attempting so to do." *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131, 2138 (2008) (quote and cite omitted).

RICO plaintiffs must plead acts of mail fraud with particularity in accordance with the Rule 9(b) standard. *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) ("[T]he District Court was certainly correct to apply Rule 9(b) to plaintiff's RICO claim predicated on a pattern of mail and wire fraud offenses."). Plaintiffs' allegations that "on one or more occasions" certain defendants "caused to be mailed, a false and fraudulent document" do not satisfy this requirement. After alleging a criminal scheme, plaintiffs simply offer conclusory allegations that the mails were used in furtherance of that scheme. They do not indicate, for instance, the time the mailings occurred, the precise statements made in the mailings, the content of the mailings or how they furthered any illegal scheme, or what the defendants gained by the mail fraud. Thus, the plaintiffs have not pled any § 1961 predicate act with sufficient particularity to state a claim for relief under RICO.

### b. CONTINUITY

Defendants also argue that plaintiffs have not alleged predicate acts that are ongoing or continuous. *See e.g.,* doc. # 56-2 at 14-16. Even if predicate acts have been sufficiently pled, there can be no liability under RICO unless the acts demonstrate criminal conduct of a *continuing* nature. *Jackson*, 372 F.3d at

---

[8] Plaintiffs also allege that defendants Daryl B. Ray and Mark McGregor "used a false and fraudulent document" bearing the "forged signatures that had been made by Roberts" in order to borrow money from a bank on 3/5/98 and 3/5/08. Doc. # 188-4 ¶¶ 104, 137, 151. This may be an attempt to allege "financial institution fraud" under 18 U.S.C. § 1344 which is included as a racketeering activity under 18 U.S.C. § 1961. However, even if plaintiffs had sufficiently pled a violation of § 1344, that would not advance their case because "only financial institutions have standing to allege violations of the financial institution fraud statute, 18 U.S.C. § 1344, as predicate acts for RICO purposes." *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 773 (N.D. Ill. 2005).

1264. This is consistent with the Congressional intent that RICO address crime that is "part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Id.* at 1265.

Sporadic criminal activity is not enough. A plaintiff must prove, in what is known as "closed-ended" continuity, a series of related predicate acts extending over a substantial period of time; or, in what is known as an "open-ended" continuity, that the racketeering acts themselves include the specific threat of repetition extending indefinitely into the future, or that the predicate acts or offenses are part of the ongoing enterprise's regular way of doing business. *Id.* at 1265-69; *H.J. Inc. v. Nw. Bell Tel. Comp.*, 492 U.S. 229, 241-42 (1989).

Here, the insufficiency of the plaintiffs' pleading again creates problems. The period of time over which the predicate acts took place is a factor in the Court's "continuity" analysis. The plaintiffs generally allege that defendants' predicate acts took place over "a substantial period of time, from at least May of 1988, through and including May of 2004, and thereafter," but offer no other details. Doc. # 188-4 ¶ 145. The Court has already noted that not everything that plaintiffs characterize as a "predicate act" makes the cut for RICO purposes (e.g., Roberts' forgery of the deed to the Property in 1988 is not a predicate act). The plaintiffs have alleged no specifics as to the mail fraud that took place. For example, defendant Joseph Strength allegedly "caused to be mailed a false and fraudulent document" on "one or more" occasions, but the Court can only speculate as to the time period over which this took place. (As far as the Court can tell, Strength's only involvement in this alleged RICO conspiracy appears to have been his drafting of a legal document transferring land on 2/10/02.)

Nevertheless, even if the plaintiffs had sufficiently pled some facts suggesting that the predicate acts took place over a substantial period of time, "the duration element might not always be enough to establish closed-ended continuity where there is only one scheme used to accomplish a discrete goal." *Millette v. DEK Techs., Inc.*, 2008 WL 5054741, at *4 (S.D. Fla. 11/15/08). The Eleventh Circuit has noted,

> where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time. *See, e.g.,* [*Efron v. Embassy Suites (P. R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000)] (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" supports the conclusion that there is no continuity); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (predicate acts occurring over three-year period insufficient to allege pattern of racketeering when complaint alleged a single scheme with a single goal); *see also Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 780 (7th Cir. 1994) (various factors besides temporal span should be considered in assessing continuity, including the number of victims, the presence of separate schemes, and the occurrence of distinct injuries); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993) (in addition to duration, weighing "extensiveness" of the RICO scheme, including number of victims, number and variety of

racketeering acts, whether the injuries were distinct, the complexity and size of the scheme, and the nature or character of the enterprise or unlawful activity); *United States v. Pelullo*, 964 F.2d 193, 208 (3d Cir. 1992) ("We have eschewed the notion that continuity is solely a temporal concept, though duration remains the most significant factor."); *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir. 1990) ("[I]t is not irrelevant, in analyzing the continuity requirement, that there is only one scheme." (internal quotation marks and citation omitted)).

*Jackson*, 372 F.3d at 1267.

The defendants argue that *Jackson* stands for the rule that a single scheme with a singular objective does not satisfy the closed-ended continuity requirement necessary to sustain a RICO claim. Doc. # 56-2 at 15. The Supreme Court, however, left the door open for cases in which a single criminal scheme could constitute closed-ended continuity. In *H.J. Inc.*, it held that RICO "*might* encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." 492 U.S. at 237 (emphasis added). Nonetheless, *Jackson* (a post-*H.J.* decision) and the cases cited therein, suggest that cases in which a single scheme will suffice for RICO liability are few and far between. Indeed, it is common for courts to dismiss RICO claims when only a single scheme with few victims is alleged. *See, e.g., Millette*, 2008 WL 5054141, at *4 (declining to find continuity where there was only one scheme to defraud real estate purchasers and procure unearned loan proceeds and where the scheme involved only "a few victims" and a single injury); *Ward v. Nierlich*, 2008 WL 852789, at *10 (S.D. Fla. 3/28/08) ("one scheme, causing harm to a few victims, and causing one injury does not create closed-ended continuity"); *Finch v. Finch*, 2009 WL 310776, at *6 (S.D. Ill. 2/9/09) (finding no continuity where "[t]he crux of the scheme ... was obtaining control over [decedent's] Estate by forging the Will and Trust Agreement" despite multiple acts of wire or mail fraud). The only scheme alleged here was the taking of the Catherine Whing Property, and the only injury was the loss of a property interest held by the heirs of the estate which occurred once the gift deed was forged in 1988.

The plaintiffs allege that from 1997 through 2007, Roberts made 45 "real property transfers or transactions,"[9] doc. # 188-4 ¶¶ 128, 132, and that certain defendants "processed and signed and switched [fraudulent documents] back and forth between each other and other defendants to conceal and confuse." *Id.* ¶ 146. Assuming that this "switching back and forth" was illegal and was accomplished using the mails, this still does not suggest "continuous" racketeering activity. Acts taken to cover up the wrongdoing in a single scheme do not necessarily extend the duration of the underlying scheme for purposes of closed-ended continuity. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 474 (7th Cir. 2007) ("[A]ctions, even if themselves illegal, taken in an effort to cover up a criminal scheme 'do nothing to extend the duration of the underlying ... scheme.'" (quoting *Midwest Grinding Co., Inc., v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992)); *see also Pyramid Sec. Ltd. v. IB Resolution Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991) (holding scheme to conceal underlying criminal activity by giving false deposition testimony does not extend the length of a closed-ended RICO scheme). Additionally,

---

[9] While the Complaint contains little to no detail regarding these property transactions, the Court presumes they all involved the Catherine Whing Property.

the Eleventh Circuit has expressly held that attempts to conceal prior wrongdoings do not constitute open-ended continuity. *See Jackson*, 372 F.3d at 1268 ("[I]n this Circuit, there is little question that attempts to conceal an initial fraudulent act are not sufficient to establish open-ended continuity."); *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592-94 (11th Cir. 1992) (no continuous pattern of racketeering activity where defendant allegedly committed mail fraud over a period of five years to conceal an initial wrongdoing).

Thus, the alleged scheme does not meet the criteria for either closed- or open-ended continuity. The plaintiffs have not shown a continuing pattern of criminal conduct worthy of the "drastic" remedy that RICO provides. *See H.J. Inc.*, 492 U.S. at 233. Only one distinct harm has been alleged by these plaintiffs, and no additional injury has befallen them from any repeated fraudulent acts by defendants. Nothing in the Complaint suggests a specific threat that any of these defendants will engage in a pattern of racketeering activity to illegally procure other parcels of land in the future, nor is there any suggestion that such activity is part of the defendants' regular way of doing business. Thus, the Complaint fails to sufficiently allege the essential element of a pattern of racketeering activity, and the plaintiffs' RICO claim fails. Despite the complexity that plaintiffs attempt to attribute to the defendants' scheme, this appears to present nothing more than a simple claim of a deed-forgery that occurred in 1988 and a subsequent cover-up which can be more appropriately addressed through traditional state-law remedies.[10]

### 2. *Other Grounds for Dismissal*

The defendants have raised various other grounds for dismissal which the Court will briefly address.

The factual basis for the claims against the Land Group and Law Group defendants is scant. Apparently, these defendants have been roped into this lawsuit through their participation in three land transactions involving the Catherine Whing Property many years after the alleged deed fraud took place.

While a RICO enterprise can be a "loose or informal" association, *Mohawk Indus.*, 465 F.3d at 1284, there is simply no basis upon which the Court might reasonably conclude that the Land or Law Group defendants had any association with the Roberts Group or anyone else directly involved with the forging of the deed to the Property. At most, the Court may speculate that Shirley Roberts attended the closing at which she transferred a portion of the Property to the Land Group, but that hardly constitutes an association sufficient to establish a RICO enterprise.

Nor is there any basis in the Complaint supporting the allegation that the Land or Law Group defendants directed the enterprise's affairs – another requirement for RICO liability. *See Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993) (each defendant must have "some part in directing the enterprise's affairs").

Finally, the harm that the plaintiffs allege is the loss of their inheritance. That injury was complete when a gift deed was allegedly forged in 1988 and was not proximately caused by the Land or Law Group defendants who participated in transactions involving the Property many years later. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) (affirming dismissal of RICO complaint, and holding that when factors other than a defendant's

---

[10] For example, the plaintiffs might file an equitable petition to cancel the deed. *See Hillis v. Clark*, 222 Ga. 604 (1966).

10

acts "are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions").[11]

Defendants James Bishop, James Bishop Law Firm, Alfonza Ramsey, and Pecolia Baisden have raised additional arguments supporting dismissal. Given the failure of the plaintiffs to adequately allege a continuous pattern of racketeering activity or to plead mail fraud with particularity, the Court need not address those.

### C. Count Two – RICO Conspiracy

Count Two of plaintiffs' Complaint alleges a conspiracy to engage in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). That claim necessarily fails because plaintiffs rely on the same allegations that are insufficient to establish the underlying RICO claim. *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) ("[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.").

### D. Count Three – § 1983 Claim

Plaintiffs bring a claim under 42 U.S.C. § 1983 against a variety of the defendants[12] alleging that Sea Island Coastal Properties, St. Simons Island Land Trust, Shirley Roberts, and M.P. Hogdon "'donated' a portion or parcel of plaintiffs['] ancestral property to the State of Georgia's Dept. of Natural Resources." Doc. # 188-4 ¶ 169. They assert that this was an unconstitutional taking for public use for which they did not receive just compensation.

Plaintiffs have failed to state a § 1983 claim. "A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978)). None of the defendants are state actors. A private party is never a state actor unless: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) the private party performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise [] ('nexus/joint action test')". *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (internal quotation marks omitted); *see also*

---

[11] Defendants have also raised the defense of res judicata based on a previous lawsuit that was filed by some or all of the plaintiffs regarding the same subject matter in the Superior Court of Glynn County, which was dismissed with prejudice. Doc. # 164. Plaintiffs replied, suggesting that they did not have a full and fair opportunity to litigate their claims. Doc. # 174 at 3 ("The Court ... never notified the plaintiff Webster Bivens of any following hearings.") The dispute over whether plaintiffs previously had an opportunity to litigate their claims in state court creates a factual issue that should not be resolved in a motion to dismiss. *Cf. Larter & Sons, Inc. v. Dinkler Hotels Co.*, 199 F.2d 854, 855 (5th Cir. 1952). Thus, the Court does not weigh in on the merits of the defendants' res judicata defense at this point.

[12] They are: St. Simons Island Land Trust, Inc.; Sea Island Coastal Properties, LLC; M.P. Hogdon; Shirley Roberts; Joseph Strength; Kathy Hutcheson; James Bishop, Jr.; James Bishop Law Firm. They also identify "The First African American Heritage Coalition" which does not appear to have been named as a defendant in this case.

11

*Wilson v. Bush*, 196 F. App'x 796, 798 (11th Cir. 2006).

The only state action in the Complaint is the Georgia's Department of Natural Resources' receipt of donated property. This is simply insufficient to allege that any of the defendants were acting under the color of state law. As a result, plaintiffs' claim pursuant to § 1983 fails.

### E. Count IV – State Law Fraud

Plaintiffs' final count alleges a state law claim for "fraud and deceit" and "suppression of fact." As the Complaint was filed under the Court's federal question jurisdiction, the Court has supplemental jurisdiction over this state law claim. Doc. # 188-4 ¶ 31; 28 U.S.C. §§ 1331, 1367. Having found that plaintiffs have failed to state a federal claim upon which relief can be granted, however, the Court declines, pursuant to § 1367(c), to exercise its supplemental jurisdiction over the remaining state law claim. If plaintiffs' real property was wrongfully taken from them, they have suffered an injustice which can be most effectively addressed in state court.

### F. Motion for Injunctive Relief

Finally, Plaintiffs, citing 18 U.S.C. § 1964, have petitioned the Court for an injunction to prevent a quiet title proceeding initiated by defendant John McQuigg. Doc. # 177. Section 1964 gives a Court authority to take action to "prevent and restrain violations of section 1962." 18 U.S.C. § 1964. As plaintiffs have failed to state a claim for a RICO violation under § 1962, however, the Court denies the request to issue an injunction.[13]

### V. CONCLUSION

Plaintiffs' motion for leave to amend their complaint is *GRANTED*, doc. # 169, and the Court recognizes Plaintiffs' Revised Second Amended Complaint, doc. # 188-4, as the "live" complaint in this case.

As the Complaint fails to state a claim for which relief can be granted under either 18 U.S.C. § 1962(c) or (d) or 42 U.S.C. § 1983, defendants' Rule 12(b)(6) and 12(c) motions are *GRANTED*. Doc. # 56 (defendants Gilbert, Harrell, Sumerford and Martin, P.C.; M.P. Hogdon; Kathy Hutcheson; Lisa Newton; Sea Island Coastal Properties, LLC; St. Simons Island Land Trust, Inc.; and Joseph Strength); doc. # 149 (defendant Alfonza Ramsey); doc. # 153 (defendant Pecolia Baisden); doc. # 156 (defendant James Bishop and James Bishop Law Firm). Therefore, plaintiffs' RICO and § 1983 claims are *DISMISSED WITH PREJUDICE*. Plaintiffs' state law fraud claims are *DISMISSED WITHOUT PREJUDICE* to plaintiffs' right to raise those claims in state court.

Finally, plaintiffs' motion for injunctive relief, doc. # 177, is *DENIED*.

This 31st day of March 2009.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[13] The Court does not reach the issue of whether such an injunction would run afoul of the Anti-Injunction Act. *See* 28 U.S.C. § 2283 (precluding a federal court from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress").